Jon B. Fougner (State Bar No. 314097)
jon@fougnerlaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Sidney Naiman and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SIDNEY NAIMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SELECTQUOTE INSURANCE SERVICES,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Sidney Naiman, by his undersigned counsel, for this class action complaint against Defendant SelectQuote Insurance Services ("SelectQuote") and its present, former, and future direct and indirect parents, subsidiaries, affiliates, agents, and related entities, alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>: This case arises from Defendant's unsolicited telemarketing in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The telemarketing was conducted using an automated telephone dialing system ("ATDS"), a tactic among those that inspired Congress to enact the TCPA and that most infuriate people to this day.

3. The telemarketing targeted, among other phone lines, cellular telephones and numbers listed on the National Do Not Call Registry ("NDNCR").

4. For every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

## II.   PARTIES

5. Mr. Naiman is a natural person.

6. He resides in Maricopa County, Arizona.

7. SelectQuote is a corporation.

8. It's a California corporation.

9. Its principal place of business is 595 Market Street, 10th Floor, San Francisco, California 94105.

## III.   JURISDICTION AND VENUE

10. Jurisdiction: This Court has federal-question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

11. Personal Jurisdiction: This Court has personal jurisdiction over Defendant because:
   a. its principal place of business is in California; and
   b. its conduct at issue was organized from that California office.

12. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the direction of the illegal telemarketing from SelectQuote's office—occurred in this District.

13. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's

claims—namely, the direction of the illegal telemarketing from SelectQuote's office—occurred in San Francisco.

### IV.   FACTS

**A.   The Enactment of the TCPA and the FCC's Regulations Thereunder**

14. <u>Robocalls Outlawed</u>: Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1). Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

15. <u>Rationale</u>: In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10). Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

16. The TCPA's sponsor described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30,821 (1991) (statement of Sen. Hollings).

17. <u>Prior Express Written Consent</u>: The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

18. <u>Do Not Call Registry</u>: Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to phone numbers on the NDNCR. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(c)(5).

**B.    The Worsening Problem of Robocalls and Spam Texts**

19. Unfortunately, the problems Congress identified when it enacted the TCPA have only grown worse in recent years.

20. "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

21. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

22. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of*

*1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

23. In 2017, the FTC received 4,501,967 complaints about robocalls, up from 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

24. Like most other leading newspapers, *The New York Times* has been writing and reporting on the exploding number of robocall complaints filed by consumers and widespread consumer outrage about illegal telemarketing. Gail Collins, *Let's Destroy Robocalls*, N.Y. Times (Mar. 1, 2019), https://www.nytimes.com/2019/03/01/opinion/robocall-scams.html; Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

25. An Emmy-winning journalist recently observed: "Everybody is annoyed by robocalls. Hatred of them might be the only thing that everyone in America agrees on now." *Robocalls*, Last Week Tonight with John Oliver (HBO Mar. 10, 2019), *available at* https://www.youtube.com/watch?v=FO0iG_P0P6M.

26. The harm from of illegal robocalls is "is at least $3 billion per year from lost time alone." Babette Boliek & Eric Burger, *Beating Back Unwanted Robocalls*, FCC (June 5, 2019), https://www.fcc.gov/news-events/blog/2019/06/05/beating-back-unwanted-robocalls (statement of FCC Chief Economist and FCC Chief Technology Officer).

27. In fact, the wasted hours exceed such time lost outright, because "little surges of the stress hormone cortisol" from interruptions from smartphones result in elevated heart rates, sweaty hands, tightened muscles, anxiety, and distraction, a "switch cost" that weighs on a person even after the interruption ends, reducing his or her efficiency by 40%. Stephanie Stahl, *Constant Interruptions From Smartphone Can Impact Brain Chemistry, Scientists Say*, CBS

Philly (May 29, 2018), https://philadelphia.cbslocal.com/2018/05/29/scientists-constant-interruptions-smartphone-impact-brain-chemistry/.

28. Robocalls are overwhelming hospitals and patients, threatening a new kind of health crisis. Tony Romm, *Robocalls Are Overwhelming Hospitals and Patients, Threatening a New Kind of Health Crisis*, Wash. Post (June 17, 2019), https://www.washingtonpost.com/technology/2019/06/17/robocalls-are-overwhelming-hospitals-patients-threatening-new-kind-health-crisis/.

C. **SelectQuote's Automated, Nonconsensual Telemarketing**

29. SelectQuote sells insurance, including term life insurance.

30. Some of its marketing strategies involve an ATDS.

31. SelectQuote uses equipment that has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).

32. SelectQuote calls numbers even though they are assigned to cellular telephone services.

33. SelectQuote calls numbers even though they are listed on the NDNCR.

34. Recipients of these calls, including Plaintiff, had not consented to receive them.

35. Recipients of these calls, including Plaintiff, had not provided prior express written consent to receive them.

36. SelectQuote's calls were not necessitated by an emergency.

37. SelectQuote's calls were made to numbers within the United States.

38. Violating the TCPA is profitable for SelectQuote.

D. **Defendant's Unsolicited, Automated Telemarketing to Mr. Naiman**

39. Mr. Naiman is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

40. He is the user of a phone number that begins "(925) 735" (the "Naiman Phone Number"). All calls to him referenced herein were to the Naiman Phone Number.

41. The Naiman Phone Number is assigned to a cellular telephone service.

42. It has been listed on the NDNCR since April 11, 2004.

43. Mr. Naiman never consented to receive calls from SelectQuote.

44. He never gave the Naiman Phone Number to SelectQuote before the call at issue.

45. He never did business with SelectQuote.

46. SelectQuote called the Naiman Phone Number on May 29, 2019.

47. When Plaintiff answered that call, there was a long pause on the other end.

48. During that pause, Plaintiff said "Hello?" several times.

49. After the pause, Plaintiff heard a clicking sound.

50. The pause and click indicated that the call had been autodialed.

51. Eventually, a human came on the calling party's end of the line.

52. During the call, Plaintiff alleged that the call had been autodialed. The human did not dispute Plaintiff's allegation.

53. Autodialing is a common practice in insurance sales.

54. The purpose of the call was to sell insurance in order to generate revenue for SelectQuote.

55. During the call, SelectQuote promoted itself several times to try to get Plaintiff to buy its services.

56. Confirming the call was from or on behalf of SelectQuote, Plaintiff received an e-mail from SelectQuote on May 29, 2019.

57. The e-mail was sent from "James.Turner@selectquote.com."

58. James Turner is an employee of Defendant.

59. The caller ID that appeared on the call was (304) 896-0957.

60. At least 30 other people have complained of receiving unsolicited calls, telemarketing, or nuisance calls from (304) 896-0957:

> Phone number 3048960957 has negative rating. 30 users rated it as negative. Approximated caller location is LOGAN, LOGAN, West Virginia. ZIP code is 25601. It's registered in LEVEL 3 COMMUNICATIONS, LLC - WV. This phone number is mostly categorized as Unsolicited call (23 times), Telemarketer (4 times) and Nuisance call (2 times).

*Who Called You from 3048960957?*, Should I Answer?, https://www.shouldianswer.com/phone-number/3048960957 (last visited July 18, 2019).

61. Whitepages has receive 58 reports of "spam" calls from (304) 896-0957. *Scam or Fraud*, Whitepages, https://www.whitepages.com/phone/1-304-896-0957 (last visited July 18, 2019).

**E.    The Invasion of Privacy Caused by Defendant's Automated Telemarketing**

62. Before directing its automated telemarketing to him, Defendant never did anything to confirm that Plaintiff had provided prior express written consent to its telemarketing.

63. The conduct alleged herein:

    a.    invaded Plaintiff's privacy and solitude;

    b.    interrupted Plaintiff's train of thought;

    c.    wasted Plaintiff's time;

    d.    annoyed Plaintiff;

    e.    harassed Plaintiff; and

    f.    consumed the battery life of Plaintiff's cellular telephone.

**V.    CLASS ACTION ALLEGATIONS**

64. <u>Class Definition</u>: Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of a class defined as follows: All persons in the United States to whom:

    a.    Defendant and/or a third party acting on its behalf made a call or sent a text message;

    b.    to a cellular telephone number;

    c.    using an ATDS or an artificial or prerecorded voice;

    d.    between the date four years before the filing of the original complaint in this case and the first day of trial.

65. Plaintiff is a member and proposed representative of the class.

66. <u>Exclusions</u>: Excluded from the class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, Defendant's legal

representatives, assignees, and successors, the judges to whom this case is assigned and the employees and immediate family members of all of the foregoing.

67. <u>Numerosity</u>: The class is so numerous that joinder of all its members is impracticable.

68. SelectQuote claims to be the largest seller of term life insurance in the United States.

69. Sending a robotext or placing a robocall costs less than one cent.

70. Defendant could afford to, and did, send thousands of robocalls.

71. <u>Commonality</u>: There are many questions of law and fact common to Plaintiff and class members. Indeed, the very feature that makes Defendant's conduct so annoying—its automated nature—makes this dispute amenable to classwide resolution. These common questions of law and fact include, but are not limited to, the following:

    a.    whether the calls were dialed *en masse* by an ATDS;

    b.    whether Defendant's desire to sell insurance constitutes an "emergency" within the meaning of the TCPA;

    c.    whether Defendant is in the United States;

    d.    whether Defendant had a pattern and practice of failing to obtain prior express written consent from people to whom it directed telemarketing;

    e.    whether Defendant had a pattern and practice of failing to remove cellular telephone numbers from their telemarketing lists;

    f.    whether Defendant had a pattern and practice of failing to remove numbers on the NDNCR from its telemarketing lists;

    g.    whether Defendant's violations of the TCPA were knowing or willful; and

    h.    whether Defendant should be enjoined from continuing to robocall and telemarket to people in violation of the TCPA.

72. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the class. Plaintiff's claims and those of the class arise out of the same automated telemarketing by Defendant and seek the same legal and equitable remedies.

73. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained competent and capable counsel experienced in TCPA class action litigation.

Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so. The interests of Plaintiff and his counsel are aligned with those of the proposed class.

74. Superiority: The foregoing common issues predominate over any individual issues, making a class action the superior means of resolution. Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for class members and classwide *res judicata* for Defendant. Classwide relief is essential to compel Defendant to comply with the TCPA.

   a. Control: The interest of individual members of the class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action (up to $1,500 per TCPA violation) are dwarfed by the cost of prosecution.

   b. Forum: The forum is a desirable, efficient location in which to resolve the dispute because SelectQuote is headquartered in it.

   c. Difficulties: No significant difficulty is anticipated in the management of this case as a class action. Management of the claims at issue is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated (and thus uniform) and because the TCPA articulates bright-line standards for liability and damages.

75. Appropriateness: Defendant has acted on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate on a classwide basis.

## VI. FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1))**
**On Behalf of Plaintiff and the Class**

76. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77. Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

78. Plaintiff and class members are entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

79. Plaintiff and class members are entitled to and seek an injunction prohibiting Defendant and all other persons who are in active concert or participation with it from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice.

## VII.   SECOND CLAIM FOR RELIEF
**(Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1))**
**On Behalf of Plaintiff and the Class**

80. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

81. Defendant knowingly and/or willfully violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice without prior express written consent.

82. Plaintiff and class members are entitled to an award of up to $1,500 in damages for each such knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all class members, prays for judgment against Defendant as follows:

A.   Certification of the proposed class;

B.   Appointment of Plaintiff as representative of the class;

C.   Appointment of the undersigned counsel as counsel for the class;

D.   A declaration that actions complained of herein violate the TCPA;

E.   An order enjoining Defendant and all other persons who are in active concert or participation with it from engaging in the conduct set forth herein;

F.     An award to Plaintiff and the class of damages, as allowed by law;

G.     An award to Plaintiff and the class of costs and attorneys' fees, as allowed by law, equity and/or California Code of Civil Procedure section 1021.5;

H.     Leave to amend this complaint to conform to the evidence presented at trial; and

I.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX.  DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

## X.  SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

RESPECTFULLY SUBMITTED AND DATED on August 15, 2019.

By: */s/ Jon B. Fougner*
Jon B. Fougner

Anthony I. Paronich, *Pro Hac Vice Forthcoming*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Edward A. Broderick, *Pro Hac Vice Forthcoming*
ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Matthew P. McCue, *Pro Hac Vice Forthcoming*
mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE

1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

Andrew W. Heidarpour, *Pro Hac Vice Forthcoming*
aheidarpour@hlfirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Avenue NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorneys for Plaintiff Sidney Naiman and the Proposed Class*