Jon B. Fougner, Esq. (State Bar No. 314097)
600 California Street, 11th Floor | San Francisco, CA 94108
(415) 577-5829 | jon@fougnerlaw.com

February 7, 2020

The Honorable Laurel Beeler
San Francisco Courthouse, Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: *Schick v. SelectQuote Ins. Svcs.*, Case No. 3:19-cv-04902-LB – Joint Letter re:
       Certain of Plaintiff's Requests for Production

Dear Judge Beeler:

  This is a proposed class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). Plaintiff Deborah Schick and Defendant SelectQuote Insurance Services, having met and conferred through counsel telephonically and in person, respectfully submit this letter regarding certain requests for production.

## RFP NOS. 7-9: CALL AND CONSENT LOGS[1]

  **(1) Statement of unresolved issue**: The issue is whether Defendant should produce its logs of automated and telemarketing calls and consent therefor during the class period.

  **(2) Summary of positions**

    **(a) Plaintiff**: The call logs are how Ms. Schick will prove an element of the claims: that she and fellow class members were called. Call logs frequently include evidence of other elements of TCPA claims and defenses, too, including which dialer was used, what dialing mode, and annotations reflecting consent and/or do-not-call requests. Courts overseeing proposed TCPA class actions routinely grant motions to compel discovery into such evidence. *E.g.*, *O'Shea v. Am. Solar Sol., Inc.*, No. 14cv894L (RBB), 2016 U.S. Dist. LEXIS 23420, at *7-8 (S.D. Cal. Feb. 18, 2016); *Thrasher v. CMRE Fin. Servs.*, No. 14-CV-1540 BEN (NLS), 2015 U.S. Dist. LEXIS 34965, at *3-8 (S.D. Cal. Mar. 13, 2015); *see, e.g.*, *Loftus v. Sunrun Inc.*, No. 19-cv-01608-RS (KAW), 2019 U.S. Dist. LEXIS 179352, at *5 (N.D. Cal. Oct. 16, 2019).

  Consent logs, meanwhile, are relevant to Defendant's affirmative defense of consent. *See* Dkt. No. 12 at 9; *see also* Dkt. No. 20 at 3-4 (Defendant claims consent for call to Ms. Schick). Courts, *see, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 176-77 (S.D. Cal. 2019), and Ms. Schick's counsel, *e.g.*, *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 974-78, 983-84 (N.D. Cal. 2019), have uncovered a proliferation of fraudulent leads in TCPA cases. Prompt discovery into such evidence is required to afford sufficient time for expert forensic analysis. In proposed TCPA class actions, courts compel production of such evidence. *E.g.*, *O'Shea*, 2016 U.S. Dist. LEXIS 23420, at *8; *Thrasher*, 2015 U.S. Dist. LEXIS 34965, at *10-15; *see, e.g.*, *Loftus*, 2019 U.S. Dist. LEXIS 179352, at *5.

---

[1] The headers and issue overviews in this letter are summaries. They aren't meant to change or narrow the scope of the respective RFPs.

**(b) Defendant**:  Plaintiffs' position ignores entirely the fact that Defendant has already produced evidence conclusively establishing that Defendant did not call the Plaintiff, including: (1) a recording of the call placed to Plaintiff by third party, Yasha Marketing; (2) a recording of the call after it was transferred to SelectQuote; (3) a declaration from Yasha, confirming it made the call through a call vendor called NTS; (4) a declaration from EzHealthMedical, the party that obtained consent from Plaintiff and provided the lead file to Yasha; (5) SelectQuote's contract with Datalot, who transferred Plaintiff's call to SelectQuote after receiving it from Yasha; and (6) a screenshot of the call log software reflecting all of the information received or maintained by Defendant regarding the call with Plaintiff.  In addition, SelectQuote conducted a diligent search for any documents referencing either Yasha, EzHealth, or NTS, and located no documents.

A plaintiff seeking class discovery "bears the burden of ... showing that ... discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir.1977).  The evidence produced here shows that Plaintiff lacks standing even to maintain her own claim; let alone represent a class of which she is not a member.[2]  To establish standing, Plaintiff must show an injury-in-fact fairly traceable to SelectQuote.[3]  To establish liability under the TCPA, Plaintiff must show either that Defendant called her mobile device without express consent or that Defendant is liable for a call made by a third party under federal common law agency principles.  *Kristensen v. Credit Payment Services Inc.* (9th Cir. 2018) 879 F.3d 1010, 1014.  SelectQuote can be liable for a call made by a third party only if that party was, or purported to be, an agent of SelectQuote.  *Id; Colgate v. JUUL Labs, Inc.* (N.D. Cal. 2019) 402 F.Supp.3d 728, 760.  The evidence produced here shows definitively that Defendant made no call to Plaintiff and that Yasha, who made the call, was not, and did not purport to be, an agent of Defendant.  Those facts conclusively establish that Plaintiff has no standing to bring her claim and no claim against Defendant -- and no amount of additional discovery can alter those conclusions.

Based upon this evidence, SelectQuote is preparing to file a motion to dismiss for lack of jurisdiction.  Where an issue of jurisdiction is raised, discovery unrelated to standing should be stayed until the issue has been resolved.  *See, e.g.*, *Twin City Fire Ins. Co. v. Employers Ins. of Wausau* (D. Nev. 1989) 124 F.R.D. 652, 653 ("Common examples [of when it is appropriate to stay discovery] occur when jurisdiction, venue, or immunity are preliminary issues."), *citing Wyatt v. Kaplan*, 686 F.2d 276 (5th Cir.1982) ("When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted.").

Plaintiff has failed to establish any basis to demand logs of every call made by Defendant in the last four years.  The court should reject Plaintiff's effort to use demonstrably false allegations as a justification to engage in a fishing expedition aimed at conjuring up a viable claim.

---

[2] Plaintiff seeks to represent a class of anyone called by SelectQuote or on its behalf in the last four years. Complaint, ¶64.
[3] *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016).

**(3) Final proposed compromises**

(a) **Plaintiff**: For now, Ms. Schick's proposed compromise is as follows. Defendant within 3 weeks should produce a supplemental discovery response stating that, following a reasonable investigation, all responsive documents have been produced except for those itemized in a concurrently produced privilege log. (No log has yet been produced). In that case, Ms. Schick will waive her untimeliness-based argument that Defendant has forfeited any right to offer the produced documents as evidence or as materials to be relied upon by its experts.

(b) **Defendant**: Defendant confirmed in a letter dated January 24, 2020 that it has conducted a diligent search and produced all documents responsive to the requests, as narrowed in meet and confer. Plaintiff previously confirmed in meet and confer that she was not seeking documents generated after the litigation was filed. Subject to that agreement, Defendant is not withholding any documents on the basis of privilege.

### RFP NOS. 28-30, 32: TELEMARKETING COMPLAINTS, DO-NOT-CALL REQUESTS, AND AUDITS

**(1) Statement of unresolved issue**: The issue is whether Defendant should produce its telemarketing complaints, do-not-call requests, and telemarketing audits during the class period.

**(2) Summary of positions**

(a) **Plaintiff**: This information is relevant because a person's complaining about something or asking that it stop is probative of whether or not the person consented to the thing and because persisting in telemarketing despite such complaints is relevant to treble damages. *E.g.*, *Berman*, 400 F. Supp. 3d at 984. There have been at least 88 consumer complaints about unsolicited, telemarketing, nuisance, and/or spam calls from the number that called Ms. Schick in this case. Dkt. No. 1 ¶¶ 60-61. In TCPA cases, courts routinely compel production of such documents. *E .g.*, *O'Shea*, 2016 U.S. Dist. LEXIS 23420, at *15-16.

Do-not-call ("DNC") lists exchanged with third parties are appropriate to produce for similar reasons. If, when Defendant or its vendors receive a DNC request, they don't communicate it to each other, treble damages may be warranted. *E.g.*, *Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 77163, at *6-8 (M.D.N.C. May 22, 2017), *aff'd*, 925 F.3d 643 (4th Cir. 2019).

And telemarketing audits are likewise relevant to consent, treble damages, and Defendant's asserted affirmative defense of reasonable practices, *see* Dkt. No. 12 at 10. Either Defendant hasn't conducted or commissioned a single audit of its telemarketing practices— which says something—or it *has*, in which case, the contents of the audit is relevant. Audits are rare and salient and thus not burdensome to locate and produce.

(b) **Defendant: First,** each of the requested items relates to calls made ***by Defendant.*** The evidence shows that Defendant did not call Plaintiff. Therefore, evidence of calls made by Defendant have no relevance here. Proving the point, Plaintiff claims there have

been 88 complaints about the number used to call Plaintiff, however, as plaintiff knows, that number belongs to Yasha's calling vendor, NTS, not SelectQuote.

Equally important, the evidence already produced shows that Yasha was not an agent and did not purport to be an agent of Defendant. As a result, Defendant cannot be liable for any call to Plaintiff and no amount of evidence of complaints or audits can alter those dispositive facts.

**(3) Final proposed compromises**

(a) **Plaintiff**: For now, Ms. Schick's proposed compromise is as follows. Defendant within 3 weeks should produce a supplemental discovery response stating that, following a reasonable investigation, all responsive documents have been produced except for those itemized in a concurrently produced privilege log. In that case, Ms. Schick will waive her untimeliness-based argument that Defendant has forfeited any right to offer the produced documents as evidence or as materials to be relied upon by Defendant's experts.

(b) **Defendant**: By letter of January 24, 2020, Defendant confirmed that it has produced all documents in Defendant's possession that relate to the Plaintiff and SelectQuote's contract with Datalot, and also confirmed that a search for documents referring to Yasha, NTS or EzHealthMedical located no documents. No purpose is served by serving a further amended response stating the same thing.

**RFP NOS. 11, 16-17, 20, 24-27, 38: TELEMARKETING VENDORS AND DEFENDANT'S OWN TELEMARKETING**

**(1) Statement of unresolved issue**: The issue is whether Defendant should produce documents related to third parties' lead generation and telemarketing and its own.

**(2) Summary of positions**

(a) **Plaintiff**: Defendant's position is that third parties made the calls at issue. It should produce its own documents concerning lead generation and telemarketing by those third parties. Telemarketing contracts frequently mimic provisions of the TCPA, so breaches of the contracts often represent TCPA violations. Correspondence with vendors is relevant because it will reflect the degree of control Sunrun enjoys over the vendors, which is relevant to vicarious liability. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019). Likewise, payments to vendors are relevant to all theories of vicarious liability: actual authority, apparent authority, ratification, and employment. For instance, an element of ratification is benefit to the principal. *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (TCPA case); *see Naiman v. Total Merchant Servs., Inc.*, No. 4:17-cv-03806-CW (N.D. Cal. July 16, 2018), ECF No. 87 (in proposed TCPA class action, compelling production of payment information).

(b) **Defendant**: Defendant is puzzled by the position Plaintiff states in this letter. By letter of January 24, 2020, Selectquote confirmed that it has produced all documents located in a search for documents referring to NTS, the party who called Plaintiff, Yasha, the party who

transferred Plaintiff's call to SelectQuote's marketing partner, Datalot, and EzHealth, who generated the lead and obtained Plaintiff's consent. SelectQuote also produced its contract with Datalot, the only party with whom SelectQuote has any relationship. To the extent Plaintiff seeks documents concerning SelectQuote calls, those documents have no relevance where it is undisputed that SectQuote did not call the Plaintiff.

### (3) Final proposed compromises

(a) **Plaintiff**: For now, except for RFP No. 38, Ms. Schick offers to narrow the scope of each of these requests to Ez Health Medical, Datalot, NTS and/or Yasha Marketing (and its affiliate Woodleigh Ventures), all of which Defendant claims to have been involved in the call to Ms. Schick. Defendant should produce within 3 weeks a supplemental discovery response stating that all documents responsive to the narrowed requests have been produced.

Regarding RFP No. 38, which is not limited to third parties, Ms. Schick has offered to narrow the request via an iterative process of keywords and hit-counts, but Defendant has thus far declined to participate. Defendant should at least engage in this collaborative process.

(b) **Defendant**: As noted, Defendant has search for documents concerning Yasha, NTS, or EzHealth and found no documents. Plaintiff did not request documents regarding Woodleigh Ventures and, in any event, Defendant does not know who Woodleigh Ventures is. RFP 38, which seeks "all DOCUMENTS concerning TELEMARKETING," is wildly overbroad and not calculated to lead to discovery of admissible evidence.

## SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from its other signatories.

RESPECTFULLY SUBMITTED on February 7, 2020.

By: */s/ Jon B. Fougner*
Jon B. Fougner

Edward A. Broderick, *Admitted Pro Hac Vice*
ted@broderick-law.com
BRODERICK LAW, P.C.
99 High Street, Suite 304
Boston, Massachusetts 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Anthony I. Paronich, *Admitted Pro Hac Vice*
anthony@bparonichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Andrew W. Heidarpour, *Admitted Pro Hac Vice*
AHeidarpour@HLFirm.com
HEIDARPOUR LAW FIRM, PPC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

Matthew P. McCue, *Pro Hac Vice Forthcoming*
mmccue@massattorneys.net
THE LAW OFFICE OF MATTHEW P. McCUE
1 South Avenue, Suite 3
Natick, Massachusetts 01760
Telephone: (508) 655-1415
Facsimile: (508) 319-3077

*Attorneys for Plaintiff Deborah Schick and the Proposed Class*

By: */s/ Daniel Rockey*

*Attorneys for Defendant SelectQuote Insurance Services*